The judgment of the court was pronounced by
Preston, J.
The plaintiff, the daughter of William Bird, deceased, has instituted this suit against her mother to obtain an account of her paternal inheritance. She annexes to her petition a statement specifying several items unaccounted for by her mother, and claims a balance of $11,245. She seeks to render John W. Dawson, the present husband of her mother, liable, for having violated the provisions and spirit of article 272 of the Civil Code, which renders the husband by the second marriage liable in solidum with his wife, to her minor children, if they contract marriage without having her continued as tutrix in the manner provided by the article. The plaintiff claims the same balance from Charles Tessier, on the ground that he intermeddled with the administration of her inheritance, and thus rendered himself liable for the amount claimed from her mother, and step-father. She also claims a legal mortgage against his property, under article 3283 of the code, for having interfered in the administration of her property.
Charles Tessier admits that he charged himself with the investment of the plaintiff’s funds; alleges that he did so in pursuance of a judgment of the Court of Probates of the parish of East Baton Rouge; renders the plaintiff an account; alleges that ho has overpaid her five thousand seven hundred and sixty-four dollars; for which he prays judgment by reconvention, with interest.
Mrs. Dawson and husband contest the plaintiff’s claims. She, moreover, alleges that the community of acquets which existed between her and her first husband has never been settled; and makes a large claim against the plaintiff growing out of that community.
The counsel of the plaintiff has furnished us with the following statement of facts, which by a careful examination of the record we find to be correct. Some time anterior to the year 1826, William Bird entered into a co-partnership with his brothers Abraham, Thwwpson, and John Bird, for the purchase of real estate, &e., and the cultivation of one, or more plantations ; and during the existence of the partnership much landed estate, situated in the State of Louisiana, and many slaves were acquired by the co-partners. On the 5th of June, 1826, William Bird was married to Nancy Black, the defendant, by whom he had two *190 children, the plaintiff in this action, and her brother and co-heir Thompson Bird. ■ William Bird died, and on the 30th of December, 1830, the surviving widow was confirmed as natural tutrix to her minor children above named.
Upon the application of the tutrix, and the recommendation of a family meeting duly convened, a judgment was rendered in the Probate Court of the parish of East Baton Rouge, on the 5th of May, 1831, ordering a partition between Abraham, Thompson, and John Bird and the heirs of William Bird; which partition was made by an act passed before Judge Tessier on the 12th day of May, 1831, and certain property fell to the widow and heirs, as is particularly set forth in the act of partition.
On the 7th of March, 1834, Nancy Black presented a petition to the probate court, stating that it was her intention to contract a second marriage, and prayed that a family meeting might be convened for the purpose of authorising her to retain the tutorship of her children. A family meeting was held, the deliberations of which were not unanimous, and the court upon application ordered her to retain the tutorship, on furnishing security to the satisfaction of the court and the under-tutor. The security was never given.
On the 20th of March, 1834, she married John W. Dawson.
On the 2d of August, 1836, Andrew Black, the under-tutor of the minors, brought suit against Nancy Black and John W. Dawson her husband, to render an account for judgment in such an amount as they might be found to owe, and to compel them to give security for their further administration in conformity to law.
Mrs. Dawson and husband filed an exception and general denial, and a claim upon the heirs for Mrs Dawson’s interest in the community, which she alleged existed between her, and her first husband.
In this situation of affairs a compromise was proposed on the part of Dawson and wife, and submitted in writing to the person representing the minors. It was proposed: “1. That Dawson and wife should pay at the rate of five per cent upon $17,000 for six years, ending the 10th of January, 1837, in lieu of all liability for revenue to the minors since the death of William Bird, in 1830, until the 1st of January, 1837. 2d. Mrs. Dawson is to retain all the revenues arising from the possession or administration of the estate of her deceased husband, or any property acquired by her, or her second husband, from said revenues, which shall be considered the separate property of Nancy Black, in consideration of her renouncing all her claim to the community, which existed between her and her first husband. If the compromise was accepted, the property of the minors was to be sold on the 1st of January, 1837, on such terms and conditions as may be fixed by a family meeting.”
On the 8th of October, 1836, the compromise was accepted by a family meeting, and the property consisting of lands, slaves and personal property, (almost, if not the entire, property falling to the heirs under the partition above mentioned,) was recommended to be sold at public auction on 1, 2, 3, 4, 5 and 6 years’ credit. The proceedings were homologated by the court on the 20th of October, 1836, and the property was decreed to be sold. It was sold to General Joseph Bernard for $69,200; half of which amount, with the interest thereon, belonged to the plaintiff, and the other half to her co-heir Thompson Bird.
On the 20th of January, 1837, the under-tutor, Andrew Black, filed a petition, praying for a judgment to the amount fixed upon by the compromise, to wit, for $5100, being 5 per cent on $17,000, from the 1st of January, 1831, to the 1st *191 of January, 1837. The petition also set forth the sale of the property for the sum of #69,200; and alleged that the monies and moveable effects of the minors, subject to the control and administration of defendants, would amount to #74,300; and concluded by praying that Nancy Dawson and husband be ordered to furnish security to that amount, pursuant to article 330 of the Louisiana Code; otherwise, that they be destituted.
On the 21st of April, 1837, judgment was rendered against Dawson and wife for #5100. It was furthermore ordered, adjudged and decreed, that they be destituted of the tutorship, so far as it concerns the administration of the property of the minors. It was further ordered, that the notes given for the minors’ property be held subject to the further order of the court.
On the 24th of March, 1838, upon application, a family meeting was duly assembled, and the members thereof recommended that Nancy Dawson be appointed tutrix, but with reservation of the administration of the funds belonging to said children, except what may be sufficient for their decent support and education. That the proceeds of the sale of the estate belonging to the children be invested on mortgage of unincumbered property, under the control of the probate court, with the assent of the under-tutor, and for said minors. And whenever said Nancy Dawson will be able to furnish such security, or mortgage 'on real estate, the funds and means of her said children be placed into her hands, and under administration by the competent court, and according to law. The same day the proceedings of the family meeting wer’e homologated.
On the 29th of September, 1838, execution was issued in the case of Black, under-tutor, against Mrs. Dawson and husband for #5100; and on the 26th of November, 1838, the sheriff made #1836 60 by the sale of two of theirnegroes, and some personal property belonging to their plantation.
On the 9th of January, 1840, Nancy Black and J. W. Dawson, co-tutors, presented an account against the minors, amounting to #3019 61, and prayed for judgment, which was rendered on the 17th of July, 1843, for #2857 61.
Mrs. Dawson never gave the security required by the decree of the 24th of March, 1838, nor regained the administration of her childrens’ property. Judge Tessier kept possession of the notes given by General Bernard for their property; collected a part thereof; reinvested a part of what was collected ; paid a portion of the funds on account of the minors’ expenses ; and in 1845 and 1846 appears to have handed over to Nancy Dawson and the children, what he supposed to be due to them.
The parties offered in evidence much documentary and verbal testimony, and especially accounts and vouchers; and their counsel have argued the case fully and ably in this court.
The district court rendered judgment for the defendants, but dismissed their claims in reconvention. In his reasons, the judge states, that the details of the case are infinite and perplexed; and he laments that a master in chancery, or other functionary, provided by other systems for the digestion of similar details, is denied under ours; and that accounts and counter-accounts, requiring adjustment upon diversied principles of calculation, a computation of interest, sometimes conventional, sometimes legal, and all running through a number of years, and through a number of hands, and sometimes through no hands at all, should have been submitted for his adjustment on sucha mass of pleadings, documents, accounts, written and verbal testimony, as the record presents.
We feel fully the force of these observations, and as the cause required “the investigation of long and intricate accounts,” we think the court should have *192 appointed auditorsto have examined the accounts, and stated the same in a report to the court, as authorised by the 443d article of the Code of Practice. And we should have remanded the cause for that purpose, but from a desire to terminate this litigation between a mother and her daughter.
'We have no doubt, from a careful examination of the record in the case of Andrew Blade, under-tutor of the minors, against Nancy Dawson and husband, the pleadings, deliberations of the family meetings, and terms of the compromise homologated and made the judgment of the court on the 20th of October, 1836, that the plantation, slaves and stock sold in pursuance thereof to General Bernard, and thereby reduced to his notes secured by mortgage, and the judgment for $5100 against the mother, was established by these proceedings to be the separate property of the minors; and that all the revenues arising from the possession, or administration of her deceased husband’s estate, and any property acquired by her, or the second husband, from said revenues were considered and settled by the judgment to be the separate property of the mother. The plaintiff insists upon the judgment in this case as settling the community; the settlement was proposed by the defendants, and was reduced to a judgment, no doubt, by their consent. We have no power to open the judgment, and cannot examine any accounts between the parties previous to its rendition.
The claim of Mrs. Daioson, for another settlement of the community of acquets with her first husband is therefore rejected. So also the claim of the plaintiff for money received by her mother in the partition of her fathers’ estate with his brothers, in 1831; also for the value of horses, and the proceeds of sugar then received, is inadmissible. It was all evidently money, and property arising from the possession and administration of the estate of her deceased husband, and which was to be considered by the compromise the separate property of Nancy Blade, in consideration of her renouncing all claim to the community which existed between her, and her deceased husband. It will not therefore be taken into our consideration of the account between the parties.
By the judgment of the probate court rendered on the 24 th of March, 1838, in pursuance of the advice of a family meeting, Mrs. Dawson was divested of the administration of the funds belonging to her children, except what was necessary for their decent support and education ; and it was ordered, that the proceeds of the sale of the estate belonging to the children should be invested in mortgages of unincumbered property, under the control of the probate court, with the assent of the under-tutor, for the minors.
There is no doubt Judge Tessier believed that he was charged by this decree with the investment of the proceeds of the sale of the minors’ property, and acted in good faith in taking the charge upon himself.
The sales of the property amounted to $69,200, payable in six annual instalments of $11,533 33 i each, payable the 2d of January, 1838, 1839, 1840, 1841, 1842 and 1843.
The interest on General Bernard’s notes, calculated to the 2d of January, 1846, allowing 10 per cent'on each note from the time it became due, amounts to $15,570. Add the principal $69,200, and we have an aggregate of $84,770.
The plaintiff married in the latter part of 1845, and Tessier accounted for and paid over to her mother, and her, more than half the above sum. We are not satisfied by the evidence, that Judge Tessier received more than 10 per cent interest on General Bernard’s notes from the time they became due, respectively, to the 2d of January, 1846, considering the advance from time to time of upwards of $7000 for the support and education of the children, and the probability *193 that he paid out of the revenue two considerable claims which we will notice hereafter.
If Tessier be regarded as a mere intermeddler with minors’ property, as charged by the plaintiff, he would be liable for the damages he caused the estate. Had he not so meddled, the mother and her husband would have been charged with the consequences of their mal-administration, under article 272 of the code invoked by the plaintiff’s counsel for having married a second time, without having been previously continued as tutrix of her minor children. They would have been accountable for five per cent upon the minors’ revenues, deducting their expenses for not reinvesting them when they amounted to five hundred dollars. Civil Code, art. 341, amended by an act of the Legislature, in 1845, p. 158.
The minors’ property thus administered would have produced $78,138, on the 2d of January, 1846. The plaintiff’s share would have been upwards of $39,000. Upwards of $40,000 was accounted for and paid to her.
The plaintiff has made out a long and minute account against Judge Tessier, and brings him in debt about ten thousand dollars. The mode adopted of calculating interest on the capital to a payment, and then deducting the payment on the aggregate of principal and interest until the next payment, however small the payments, or short the intervals between them, is not admissible in a tutor’s account. 2 Toullier, 385, No. 1217. If he invests the minor’s revenues once a year, and only when the surplus revenues amount to more than five hundred dollars, we think he complies with the spirit, if not the letter of our law.
We are satisfied, as already stated, that Tessier acted in good faith, believing he was bound by the decree of the court of probates to superintend the administration of the property of the minor children of Wm. Bird, until a tutor was qualified upon giving good security; and therefore will only require him to account as a tutor so qualified. The mode of calculation adopted by the plaintiff might work great injustice to him, as it is not proved that he did, or could have safely invested the funds of the minors, as soon as received, especially at ten per cent interest, which seems to have been the rate he adopted for their investment.
Judge Tessier, on the 24th of July, 1845, when the plaintiff was about to be married, rendered an account to her toother, and handed over assets of the minors to the amountof $76,196 66, interest being calculated to the 2d of January, 1846. He handed over her receipts and other vouchers for money paid at diffex'ent times for the support, education and expenses of the minors, to the amount of $7379, and two claims he alleged to have paid for their estate, amounting to $1380: — amounting in the aggregate to $84,955 66.
As the plaintiff and her brother, on the 16th of December, 1846, divided these and other assets between them, we think it was incumbent on her to show error in these settlements to her prejudice.
There was no material error to her prejudice, as the following statement will show.
On the 24th of July, 1845, Judge Tessier handed over to Mrs. Dawson, for her children, the three last notes of General Bernard for $34,600, with all the interest due upon them. It was incumbent upon him to account for the three first notes of General Bernard, due, respectively, the 2d of January, 1838, 1839 and 1840, with all the interest received upon them. It is proved, that he had received from General Bernard, at different times, on these notes $42,275 97 in cash. Of course, $34,600 was received for the principal of the notes, and $7675 97 Was received for interest; or the revenues of the minors. For this *194 revenue he produces Mrs. Dawson's receipt, for money paid for the support, education and expenses of the children, for $7379, leaving less than $300 unexpended. The objections to the vouchers 17, 45 and 50 are not well founded. The memoranda filed as voucher 34, for $73, we do not understand; but Mrs. Dawson took it from Judge Tessier for that sum. He must be discharged and Mrs. Dawson charged with it, who we shall see has a larger claim against the plaintilf.
As we have seen, he handed over to Mrs. Davison assets to the amount of $76,196 66. Of this sum there was handed over as interest $20,385 52; and, of course, as capital $55,811 14. ilírs. Laycoc7c was entitled to her whole capital $34,600.
She received in the partition with her brother, the capital of General Bernard's note, due the 2d of January, 1841, $11,533 33; and of the capital of his last note, $9243 23. She received the bond of her husband $992; do. do. $1040; Combs' bond $1500; do. 1406 ; Byrd Haraldson’s bond $600 ; Morgan’shonA, as cash, $2363 ; Michael Chambers' bond $1100; the sale of Gates' house, as cash, $2000; Duplantier's bond and property mortgaged, she received in the partition as $2300; but we believe she should have been charged with but ($1760) the amount of principal and interest then due, $1760; she afterwards received M. K. Haden’s bond, $1100. Total $34,637 56.
She thus received in capital a small amount more than was due to her. But there was handed over to her mother, as interest or revenue, $20,385 52. We think there should be added interest, which had then accrued on Mr. Chamber's note, to the amount of $-440'; making an aggregate of $20,825.
On an administration so favorable to the minors from its beginning to its termination, as that which we have had under consideration, we think ten per cent on the whole amount of the revenues received and accounted for, allowable by law, are but a reasonable compensation. The whole revenues accounted for amounted to $28,500 ; ten per cent on this amount $2850; which leaves to be accounted for or paid to the minors, $17,975.
The two items which Judge Tessier claimed to have paid, in his account rendered to Mrs. Dawson, we think should be allowed. They consist of $680, said to have been paid to raise a mortgage on property mortgaged by Duplanlier to the minors, probably paid, being the first mortgage, to make the minor’s second mortgage good. Mrs. Dawson allowed it, and, indeed, Mrs. Laycoclc took Duplantier’s mortgage, in her partition with her brother, at $2300, although but $1760 was then due on the mortgage. This transaction is not clearly explained by the evidence; it is the plaintiff’s fault, who might, in strictness, be charged with the $2300, especially as through Duplantier's bond she afterwards became owner of the mortgaged property. But we have charged her with $1760, and suppose the mortgage to have been paid out of revenues in Tessier's hands. The other item is $700, stated to be Brunoi’s mortgage, taxes, &c., accredited by Mrs. Davison, and supposed by us to have been paid out of the revenue. Deduct them from the revenue, $1380, it leaves to be- divided between the plaintiff and her brother $16,595. Mrs. Laycock's share is $8297 50.
She received interest on General Bernard’s first note; which interest was due the 2d January, 1846, $5766 66; interest on her husband J. C. Dawson's bonds, $708 80; interest on Comb’s bonds, $674; interest on Haden's note, less $90 received by her brother, $460 ; interest on Haralclson’s note, $120; interest on M. Chambers' bond, $440. Total $8169 46. Leaving a balance due to her of $126 04. If we add to this balance the half of $296 97 of interest received from *195 General Bernard on this three first notes, and unexpended in the support and education of the children, $148 48, there would be a balance in her favor of $274 52. We might reverse the judgment, and render a judgment for the plaintiff against Tessier for $274 52, and subject him to the costs of this expensive litigation, especially as he might and should have rendered an exact account, on which he and his counsel should have relied without stating, as done in his brief, “that the question involved being simply one of calculation of interest, addition and subtraction, this court will rely on its own calculation, and not that of counsel.” But we think, on the whole case, that Judge Tessier has done full justice to the plaintiff, and do not feel ourselves authorised to reverse the judgment for so small a supposed balance, growing out of an account amounting to upwards of $80,000 ; and which balance is based upon data which we know to be uncertain. This would be peculiarly improper, as the plaintiff settled Duplantier’s mortgage with her brother as worth $2300, and we charge her with but $1760, whilst this difference is unexplained.
The plaintiff next claims a judgment against her mother. We lament the litigation in which this lady has been involved, on account of her children. It commenced when they were infants, and is not terminated now that she it far advanced in old age. In 1831, she settled her first husband’s succession, and hadan estate for herself and two children worth about $27,000 entirely free from debt. The children’s share appears to have been $17,000. She married again, in 1834, but still managed the estate of herself and children so prudently and successfully, that on the 2d of January, 1837, the fortune of the children alone was upwards of $60,000 without owing a dollar; or had more than tripled in value in six years. Their estate was then sold by the court of probates, notwithstanding her strenuous opposition to the proceedings which led to it; and she and her children were turned out of their paternal estate, to prevent her mismanagement of it. The estate of the minors prospered in the hands of strangers, whom the plaintiff styles intermeddlers, who, however, rendered her full justice, as has been shown by the examination of the case against Judge Tessier.
During the nine years that the mother was deprived of the administration of her children’s property, she drew from theirfunds $7379 for their decent support, education and expenses; and besides, was found indebted to them, in 1837, in the sum of $5100, subject to the payment of the expenses of the very long and expensive litigation by which it was established. For the half of these sums she is bound to account to her daughter. The plaintiff has presented us a very minute and detailed account of principal and interest, commencing on the 13th day of May, 1831, and resulting, on the 31st of December 1846, in abalance of $2267 against her mother. We think, for the reasons already given in examining the compromise between them, that the account should have commenced on the 1st day of January, 1837, with half the judgment for $5100 againstfthe mother. As the judgment was given entirely for interest, as by its terms it did not bear interest, and as nearly half of it was collected by the sale of the mother’s negroes, horses, ox and waggon, under execution, evidently to pay the expenses of the litigation by which it was obtained, and to which it was subjected, we are not satisfied that any part of that judgment should bear interest. We are certain that the small sums received from time to time, during the course of nine years, to defray the expenses of the support and education of the children, should not be charged with interest, nor a larger sum of $1000 drawn at one time, shortly before the plaintiff's marriage, and drawn probably to prepare for that event.
*196 The disbursements are admitted, and, indeed, they are minutely proved, for while there is a voucher for $400 for a piano, there is a receipt for thirty cents paid for a boquet for her daughter. Commencing the account at the proper time, rejecting the charges for interest, and crediting the mother with the disbursements, the plaintiff falls in debt to her more than a thousand dollars. In a word, her mother held for the plaintiff less than eight thousand dollars at the death of her father, during her infancy. For after realising a crop her paternal fortune was fixed at $8500, as of the 1st of January, 1831, by a compromise to which she adheres with tenacity, whilst her mother is anxious to open it. The mother gave her the best education which could be obtained in this and a sister State; afforded her all the rational pleasures and indulgencies of youth; and when she was married, at the early age of sixteen, placed her in possession of afortune of forty-two thousand seven hundred and seventy dollars, or more than five times her paternal inheritance. Had she administered this fortune as well as its administrators, either legal or intermeddlers, did during her minority, it is not probable this suit would have been instituted against her mother.
The decisions of this court have not encouraged suits of children against their parents, unless to redress clear and palpable injustice. There are services which parents render to their children, and which it is presumed they perform until the contrary appears, which money cannot pay; and filial duty should restrain the child from exposing the faults of its parents, or worrying them with litigation, unless compelled by extreme necessity.
We are of opinion, that the judgment of the district court should be affirmed, with costs. The judge might have rendered judgment against Tessier for a very small sum; as he did not, we have not the means of determining with certainty-thnt he was wrong.
It is therefore ordered, that the judgment of the court below be'affirmed, with costs.